UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-60104-SMITH/VALLE

MARIE CLAUDE
LALLIER DENICOURT,

    Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 17) and Defendant's Motion for Summary Judgment (ECF No. 18) (together, "the Motions"). U.S. District Judge Rodney Smith has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 2).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 19), Plaintiff's Reply (ECF No. 20), the hearing on the Motions,[2] and being otherwise fully advised on the matter, the undesigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

---

[1] Kilolo Kijakazi has been appointed Acting Commissioner of the Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

[2] The Court held a hearing on the Motions on August 29, 2022. (ECF No. 25). The transcript of the proceedings is incorporated by reference. (ECF No. 26) (hereinafter "Hr'g Tr.").

## I.     PROCEDURAL HISTORY

In June 2018, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability beginning on August 12, 2017.  (R. 20).[3]  Plaintiff's application was denied initially and again upon reconsideration.  (R. 125-27, 132-37).  Thereafter, Plaintiff requested a hearing, which was held on June 25, 2020, before ALJ Dennis Hansen.  (R. 63-86, 138-39).  Plaintiff appeared with counsel and testified at the hearing.  (R. 63-80).  A Vocational Expert ("VE") also testified.  (R. 81-85). On July 24, 2020, the ALJ issued a decision denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 20, 30).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 6-11); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making his determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Biestek*, 139 S. Ct. at 1154

---

[3] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer.  *See* (ECF Nos. 10, 11).

(quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for DIB). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?

>   (4)   Is the person unable to perform his or her former occupation?
>   (5)   Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4) (evaluation process for DIB). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004)*, abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. 2022). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239. The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to

other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

### III.  THE ALJ'S DECISION

On July 24, 2020, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the [Act] from August 12, 2017, through the date of this decision."  (R. 20, 30).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 12, 2017, the alleged onset date.  (R. 22).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: degenerative changes of the cervical and lumbar spine, arthritis of the right foot and sacrum, neuropathy of the right hand/wrist, anxiety, and depression.  *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings.  (R. 23-24).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform light work with various exertional and non-exertional limitations.  Plaintiff's exertional limitations included: (i) sitting and standing for 4 hours in an 8-hour workday; (ii) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and reaching overhead; (iii) never climbing ladders, ropes, or scaffolds; (iv) occasional exposure to extreme cold or vibration; (v) frequently handling with her right upper extremity; and (vi) no exposure to unprotected heights or dangerous moving machinery.  Plaintiff's non-exertional limitations included: (i) understanding and remembering simple instructions; (ii) sustaining attention and concentration to complete simple tasks with

5

regular breaks every 2 hours; (iii) occasionally interacting with supervisors, coworkers, and the public; and (iv) adapting to routine work conditions and occasional workplace changes. (R. 25).

Based on this RFC, the ALJ concluded that Plaintiff was not able to perform any of her past relevant work. (R. 28). The ALJ thus proceeded to Step 5 of the sequential analysis and found that Plaintiff could perform other jobs in the national economy, such as a checker, toll collector, and assembler, all unskilled jobs with a light exertional level and an SVP of 2. (R. 29, 82). Thus, the ALJ concluded that Plaintiff is not disabled. (R. 30).

## IV.  DISCUSSION

Plaintiff raises two arguments on appeal.[4] First, Plaintiff argues that the ALJ erred in evaluating the persuasiveness of the medical opinion of psychologist Dr. John Adams, who treated Plaintiff several times in December 2018 and once in January 2019. (ECF No. 17 at 3-9). Next, Plaintiff challenges the ALJ's consideration of Plaintiff's statements about her symptoms and resulting limitations. *Id.* at 9-13. As discussed below, the undersigned finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence. Accordingly, the ALJ's Decision should be affirmed.

### A. The ALJ Properly Evaluated Dr. Adams' Opinion

#### 1. Applicable Law

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions. 20 C.F.R. § 404.1513(a). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the

---

[4] In the Joint Status Report, Plaintiff withdrew her challenge to the constitutionality of the Commissioner's appointment. (ECF No. 24 at 1 n.1). In addition, during oral argument on the Motions, Plaintiff stated that the first issue, the ALJ's assessment of Dr. Adams' medical opinion, was the dispositive issue. (Hr'g Tr. 6:6-8). Nonetheless, for completeness, the undersigned will address Plaintiff's challenge to the ALJ's consideration of Plaintiff's statements about her symptoms and limitations.

claimant] ha[s] one or more impairment-related limitations or restrictions" regarding her ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace).  20 C.F.R. § 404.1513(a)(2).

Relevant here, for medical opinions on claims filed after March 2017, the treating source rule has been eliminated.[5]  *Matos v. Comm'r of Soc. Sec.*, No. 21-CV-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."); *Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020).  Under the revised regulations, while a medical source's treatment relationship with a claimant remains a factor to be considered in assessing the persuasiveness of a medical source opinion, the opinion of a treating source is no longer entitled to controlling weight or deferential treatment.  *Ramos*, 2021 WL 5746358, at *9; *Bonilla*, 2020 WL 9048787, at *4.  Instead, the persuasiveness of any medical source's opinion (whether treating, examining, or reviewer) depends on whether the opinion is: (i) supported by objective medical evidence and the source's explanation of his opinion; and (ii) consistent with other evidence in the medical record.  20 C.F.R. § 404.1520c(c)(1)-(2).  These factors, referred to as "supportability"

---

[5] For claims filed prior to March 27, 2017, the treating source rule generally required ALJs to give "controlling weight" or "greater weight" to a treating source's opinion absent "good cause." 20 C.F.R. § 404.1527(c).  There is no dispute that the new regulations govern Plaintiff's disability claim.

7

and "consistency," are the "most important factors" in the ALJ's analysis.[6] 20 C.F.R. § 404.1520c(b)(2); *Matos*, 2022 WL 97144, at *4; *Bonilla,* 2020 WL 9048787, at *4. Additional factors include treatment relationship with the claimant, area of specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(3)-(5). Furthermore, although the ALJ must articulate how he considered medical opinions from all medical sources, the ALJ need only explain his consideration of the supportability and consistency factors. *Bonilla,* 2020 WL 9048787, at *5; 20 C.F.R. § 404.1520c(b)(2).

### 2. The ALJ Properly Evaluated Dr. Adams' Opinion

Dr. Adams treated Plaintiff four times: December 15, 2018 (one-hour initial evaluation); December 22, 2018 (45-minute individual therapy session); December 31, 2018 (45-minute individual therapy session); and January 7, 2019 (45-minute individual therapy session).[7] (R. 850-52). On March 4, 2019, Dr. Adams completed a Medical Assessment of Ability to do Work-Related Activities (Mental) (the "March 2019 Opinion"). (R. 887-90). In the March 2019 Opinion, Dr. Adams opined that Plaintiff's ability to use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention and concentration was non-existent to poor. (R. 887). Additionally, Dr. Adams opined that Plaintiff had no or poor ability to: (i) understand, remember, and carry out detailed and complex instructions; (ii) behave in an emotionally stable manner, relate predictably in social settings, or demonstrate reliability. (R.

---

[6] "Supportability" refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1). "Consistency" looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinions presented. 20 C.F.R. § 404.1520c(c)(2).

[7] During oral argument on the Motions, Plaintiff's counsel confirmed that this was the universe of Dr. Adams' treatment notes. (Hr'g Tr. 9:1-5; 9:9-14).

8

888). According to Dr. Adams, these limitations were supported by Plaintiff's "psychological testing and psychotherapy notes" reflecting that Plaintiff was "severely emotionally impaired." *Id*. Dr. Adams reiterated that Plaintiff's "conditions during sessions and results of psychological testing" support his conclusion that Plaintiff's "limitations are across the board in terms of being able to perform job tasks and making personal and social adjustments." *Id*. Dr. Adams further asserted that Plaintiff's "depression, severe anxiety, impaired thought process, memory impairment, social impairment, [and] sleep problems" were material to her current disability. (R. 890). Lastly, Dr. Adams concluded that Plaintiff's mental health impairment has been present since August 2017, with "very little relief" from psychotropic medications and her emotional functioning remains poor. (R. 889).

After reviewing the medical evidence, the ALJ concluded that Dr. Adams' March 2019 Opinion was not persuasive. The ALJ explained:

> John Adams, Ph.D., completed a mental assessment and appeared to opine the claimant had limitations with poor findings in concentration, persistence, and pace, social functioning, and work adaptability (Ex. 17F). The opinion of the doctor is not persuasive, as it is not supported by the doctor's minimal assessments in late 2018 and early 2019 and the doctor provided no explanation or references to the record. Furthermore, the opinion is inconsistent with substantial evidence that showed fairly normal mental status examinations with psychotropic medication. Furthermore, the doctor indicated poor findings in these areas with disabling findings on a mental checkbox form, but these limits were excessive given the assessment above. (Ex. 4E, 2F, 11F, 14F, 17F, 20F, 22F, 26F, & 28F).

(R. 27-28).

Plaintiff argues that the ALJ did not sufficiently explain the factors of supportability and consistency in evaluating Dr. Adams' opinion, thus requiring reversal and remand. (ECF No. 17 at 6-9); *see also* (Hr'g Tr. 19:7-23). For the reasons discussed below, the undersigned disagrees.

On the supportability factor, the ALJ accurately summarized the contents of Dr. Adams' limited treatment notes, noting "the doctor's minimal assessments in late 2018 and early 2019"

and the lack of "explanation or references to the record." (R. 27). Dr. Adams provided individual therapy to Plaintiff three times in December 2018 and once in January 2019. (R. 850-52). Without more, these treatment notes do not support the disabling limitations in Dr. Adams' March 2019 Opinion. *See, e.g.*, *Popock v. Astrue*, 374 F. App'x 903, 904 (11th Cir. 2010) (finding "good cause" (under prior standard) to discount a treating physician's opinion where doctor's notes were "limited" and "medical evidence in the record supported a contrary finding"). Plaintiff's counsel conceded as much during oral argument on the Motions. *See, e.g.*, (Hr'g Tr. 10:17-25) (agreement that 12/22/18 treatment note (R. 851) does not support the doctor's disabling opinion); (Hr'g Tr. 11:1-19) (agreement that the 12/31/18 and 1/7/19 treatment notes (R. 851-52) reflect Plaintiff's diagnosis of depression and memory issues, but do not include any functional limitations); (Hr'g. Tr. 13:2-9) (agreement that there are "few" treatment notes from Dr. Adams, which "unfortunately" do not "say a lot"). Throughout the sessions, Dr. Adams focused on "therapeutic intervention to focus on cognitive skills to better manage irrational thinking." (R. 851).

Additionally, although Dr. Adams' March 2019 Opinion purports to be based on the results of psychological testing, the record contains no diagnostic or other psychological testing. Rather, as Plaintiff's counsel stated during the hearing on the Motions, the "psychological testing" referenced in Dr. Adams' March 2019 Opinion is Plaintiff's Biographical Information and Personality Data Forms, which Plaintiff completed and then submitted to Dr. Adams at the January 2019 therapy visit. (R. 853-62); (Hr'g Tr. 8:18-25, 12:14-22). But these forms reflect Plaintiff's subjective statements about her symptoms and are not "psychological tests." The absence of such diagnostic psychological tests further undermines the supportability of Dr. Adams' March 2019 Opinion.

On the consistency factor, the ALJ explained that the March 2019 Opinion was "inconsistent with substantial evidence that showed fairly normal mental status examinations with

psychotropic medication. Furthermore, the doctor indicated poor findings in these areas . . . on a mental checkbox form, but these limits were excessive given the assessment above." (R. 27-28). During oral argument on the Motions, Plaintiff argued that the Government's "checkbox" argument for discounting a medical opinion is outdated in light of *Schink v. Commissioner*, 935 F.3d 1245 (11th Cir. 2019), which requires that the medical opinion be read in the context of the source's underlying treatment notes. *See* (Hr'g Tr. 6:24-7:15). Although Plaintiff correctly summarizes this aspect of *Schink*, Plaintiff's argument misses the point that Dr. Adams' limited treatment notes, without more, do not support his disabling opinion in the check-the-box form.

To support his conclusion on the supportability and consistency factors, the ALJ cited to a string of record evidence: Exhibits 4E, 2F, 11F, 14F, 17F, 20F, 22F, 26F, and 28F.[8] (R. 28). Plaintiff argues that the ALJ's failure to cite to a specific page reference is reversible error because it requires the Court "to go through the record and look at Exhibit[s] 4E, 2F, 11F, 14F, etc., to see what was in there that supported judge's finding." (Hr'g Tr. 42:19-22). But that is precisely what the Court must do: the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053 (citation omitted). Moreover, there is no requirement that the ALJ cite to a specific excerpt or page in the treatment notes that he found inconsistent. *See Serrano v. Saul*, No. 19-CV-241-AW-HTC, 2020 WL 5550505, at *7 (M.D. Fla. Aug. 7, 2020) (noting that there is no requirement that

---

[8] Ex. 4E contains Plaintiff's 8/24/18 Adult Function Report (R. 257-66); Ex. 2F contains Dr. Pierre Andre's treatment notes from 2016 and July 2018 (R. 382-438); Ex. 11F contains treatment records from Pain Management Strategies between April 2017 and November 2018 (R. 749-844); Ex 14F contains Dr. Adams' treatment notes in December 2018 and January 2019 (R. 850-52); Ex. 17F contains Dr. Adams' March 2019 Opinion (R. 887-90); Exs. 20F and 22F contain records of Plaintiff's hospital visits on 10/5/18 (Broward Health) (R. 998-1014) and 3/1/19 (Boca Raton Hospital) (R. 1019-1276); Ex. 26F contains Dr. Jessica Shabo's treatment notes from January 2019 through February 2020 (R. 1433-47); and Ex. 28F contains Cora Physical Therapy records between April 2018 and May 2020 (R. 1451-1566).

11

the ALJ cite to a specific excerpt or page in the treatment notes that he found to be inconsistent). Preferably, the ALJ would have provided corresponding pin cites to these exhibits, which would have facilitated the undersigned's review of the record. But the ALJ did not do that, leaving to the undersigned the task of reviewing these exhibits to verify the ALJ's statements regarding the regulatory factors of supportability and consistency.[9] Having done so, the undersigned finds that substantial evidence supports the ALJ's Decision, as discussed below.

The undersigned's review of the record confirms the ALJ's summary of the evidence. For example, the ALJ referenced Exhibit 26F, which are psychiatrist Dr. Jessica Shabo's treatment records for Plaintiff between January 2019 and February 2020. (R. 1433-47). As discussed during oral argument on the Motions, Dr. Shabo's treatment notes reflect Plaintiff's diagnosis of depression and anxiety, but also reflect that Dr. Shabo rated the severity of Plaintiff's depression as moderate and her anxiety as medium, noting mostly normal mental status examination results, including normal thought processes, full orientation, and only mildly limited coping skills. *See, e.g.*, (R. 1433, 1434, 1435, 1436, 1437, 1439, 1440, 1441, 1443, 1444); *see also* (Hr'g Tr. 16:8-24, 17:22-18:2). The ALJ also referenced Exhibit 2F, the treatment notes of Dr. Pierre Andre from March 2016 through July 2018. (R. 382-438). Like Dr. Shabo's treatment notes, these notes reflect Plaintiff's diagnosis of depression and anxiety, but contain no psychological testing results

---

[9] Although cumbersome, the task was not difficult because the evidence overwhelmingly supports the ALJ's Decision. Thus, even if the ALJ had erred in omitting specific pin cites, such error would be harmless considering the overwhelming evidence supporting the ALJ's RFC determination. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015); *Hanback v. Comm'r, Soc. Sec. Admin.*, 581 F. App'x 840, 841 (11th Cir. 2014). *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citation omitted). Nonetheless, the ALJ's abbreviated record-citing could have resulted in reversal if, for example, the record had contained conflicting evidence to support differing conclusions. *See, e.g.*, *Richardson v. Kijakazi*, No. 20-CV-14234, 2022 WL 970884, at *7 (S.D. Fla. Mar. 31, 2022) (rejecting ALJ's conclusory statement that a medical opinion was inconsistent with other record evidence because "[i]t is not obvious . . . that this is the case."). Precision is by far the better practice.

or functional limitations. Moreover, as the ALJ correctly summarized, these treatment notes again reflect Plaintiff's mostly normal mental status examination results. *See, e.g.*, (R. 401, 403, 405, 407, 409, 413, 415, 417, 424, 426). Similarly, Exhibit 4E, Plaintiff's Adult Function Report, also supports the ALJ's discussion of the consistency factor. (R. 28, 257-66). In the Report, Plaintiff denies memory loss, problems understanding or following instructions, and problems getting along with others. (R. 263). Plaintiff also admits that she is a good listener, follows written instructions "very well," and can complete tasks. (R. 263). In addition, Plaintiff reports that she can get along "very well" with authority figures and can "adjust pretty well" to changes in routine. (R. 264); *see also* (Hr'g Tr. 23:2-24:16) (discussion of inconsistencies between Function Report, Dr. Adams' March 2019 Opinion, and Plaintiff's testimony). Plaintiff's statements in the Function Report further support the ALJ's conclusion that Dr. Adams' March 2019 Opinion is "inconsistent with substantial evidence that showed fairly normal mental status examinations."[10]

Against this backdrop, the undersigned finds that the ALJ properly evaluated Dr. Adams' March 2019 Opinion, and adequately explained both the supportability and consistency factors. 20 C.F.R. § 404.1520c(c)(1)-(2). In so doing, the ALJ was not required to use any particular language or formulations as long as the ALJ applied the proper legal standards and substantial evidence supports his decision. Such is the case here. *See Gelbart v. Berryhill*, No. 17-CV-61361, 2018 WL 4573145, at *3 (S.D. Fla. Sept. 25, 2018) (concluding that, although regulatory factors were not specifically enumerated and discussed by name, the evaluation was evident in the ALJ's analysis). Moreover, the ALJ was not required to discuss every piece of evidence or articulate "good cause" to discount the medical opinion. Here, the ALJ did what the regulations required:

---

[10] Relatedly, Plaintiff's statements in the Adult Function Report are also inconsistent with Plaintiff's testimony at the administrative hearing about the intensity and persistence of her symptoms and limitations. *See* Section B, *infra*.

13

he articulated the supportability and consistency of Dr. Adams' opinion. *See* 20 C.F.R. § 404.1520c(b)(2); *Matos*, 2022 WL 97144, at *4.

Ultimately, the issue is not whether some evidence might support Plaintiff's allegations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Nor is it for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel,* 631 F.3d at 1178 (citation omitted). Rather, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053. Furthermore, even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth,* 703 F.2d at 1239. Thus, after reviewing the record as a whole, the undersigned finds that substantial evidence supports the ALJ's Decision and that the ALJ applied the proper legal standards in evaluating Dr. Adams' March 2019 Opinion.

### B. The ALJ Properly Assessed Plaintiff's Subjective Symptoms and Limitations

Plaintiff next argues that the ALJ did not properly consider Plaintiff's statements about her symptoms and limitations. (ECF No. 17 at 9-13). As discussed below, Plaintiff's argument is unpersuasive.

#### 1. Applicable law

In considering a claimant's symptoms, the ALJ must follow a two-step process: "Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms." *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r,* 724 F. App'x 700, 703 (11th Cir. 2018) (citing SSR 16-3p). "Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit [his/her] ability to perform work-related activities." *Id*. An ALJ considers "whether there are any inconsistencies in the evidence and the

14

extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [the] symptoms affect [the claimant]. [A claimant's] symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529(c)(4). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. May 17, 2021) (citation omitted). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* Nonetheless, courts will not disturb a clearly articulated finding about subjective complaints that is "supported by substantial evidence." *Id.* (citation omitted); *Matos*, 2022 WL 97144, at *7 (same).

*2. The ALJ Clearly Articulated His Findings Regarding Plaintiff's Statements*

Here, after referencing the proper legal standards (*i.e.*, 20 C.F.R. § 404.1529 and SSR 16-3p) and discussing Plaintiff's testimony regarding her impairments, treatment history, and activities of daily living, *see* (R. 25-28), the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her impairments and symptoms were not entirely consistent with the medical evidence and other evidence in the record, for the reasons discussed in the ALJ's Decision.[11] (R. 28). The ALJ summarized the evidence as follows:

> [C]laimant alleged to have difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks,

---

[11] The ALJ found Plaintiff's statements to be "less than fully persuasive" to the extent they are inconsistent with the RFC. (R. 28). The variation in the ALJ's verbiage is immaterial to the undersigned's analysis.

> concentration, and using her hands. Despite these allegations, the evidence indicates she maintains the ability to perform numerous tasks, including attending to her personal care needs, preparing meals, performing household duties, watching TV, driving a car, shopping, using the computer, paying bills, and spending time with others. (Hearing Testimony & Ex. 4E, 2F, 11F, 14F, 17F, 20F, 22F, 23F, 26F, & 28F). Overall, the undersigned finds that although the claimant may have limits in the type of work she can perform, the objective findings [discussed] below do not support the claimant's allegations of an inability to do all work. [The ALJ then discussed Plaintiff's orthopedic and mental health treatment notes at length].
>
> * * *
>
> [T]here are inconsistencies in the evidence of record concerning the claimant's description of her symptoms and limitations. She alleges extreme functional limitations; however, the longitudinal medical evidence of record, discussed in detail above, does not support her allegations. The claimant's pain and mental allegations are not persuasive in light of the medical evidence. While the claimant has complained that her pain level appears to be increasing with constant pain, the objective findings have not changed. Her condition does not show deterioration or any additional medical difficulties. The claimant's condition has stabilized and her physicians have recommended that the claimant proceed with only conservative treatment. Overall, the medical evidence of record strongly suggests that the claimant's physical and mental health symptoms may not be as severe as she alleged.
>
> * * *
>
> The undersigned has reviewed and analyzed all evidence of record, including medical records, whether or not they have been specifically discussed in the decision . . . Treatment notes in the record do not sustain the claimant's allegations of a disabling impairment. The persuasiveness of the claimant's allegations is weakened by inconsistencies between her allegations and the medical evidence of record. The undersigned finds that the claimant experienced some limitations but only to the extent described in the [RFC] above.

(R. 25-26, 28).

The undersigned finds that the ALJ properly evaluated Plaintiff's statements about her symptoms and limitations. First, Plaintiff acknowledged during the hearing on the Motions that "when it relates to the credibility analysis, the [ALJ] did give some reasons why he was finding [Plaintiff's] testimony not credible." *See* (Hr'g Tr. 20:6-8). Second, as discussed more fully above, the doctors' treatment notes and Plaintiff's own Adult Function Report do not support Plaintiff's statements about the severity of her symptoms and resulting functional limitations.

16

Third, the ALJ's Decision reflects the ALJ's fulsome consideration of the entire record, including Plaintiff's testimony, Adult Function Report, treatment history, and activities of daily living. Lastly, the ALJ clearly articulated the reasoning behind his evaluation of Plaintiff's subjective complaints. *See Whitmore*, 855 F. App'x 643-44 (concluding that there was sufficient evidence to support ALJ's discounting of claimant's subjective complaints of pain); *Matos*, 2022 WL 97144, at *7 (finding that substantial evidence supported the ALJ's evaluation of claimant's subjective complaints).

Against this factual and legal backdrop, the undersigned finds that substantial evidence supports the ALJ's assessment of Plaintiff's statements about her symptoms and limitations in determining Plaintiff's RFC, and the ALJ applied the proper legal standards. A court should not disturb a clearly articulated finding about subjective complaints that is "supported by substantial evidence." *Id.* (citation omitted); *Matos*, 2022 WL 97144, at *7 (same). Thus, the ALJ's Decision should therefore be affirmed.

## V.     RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 17) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 18) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED**.

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on September 9, 2022.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
All Counsel of Record